## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MANAGEMATICS LLC,** ) | |
| ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| **EBAY, INC.,** ) | Jury Trial Requested |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

### I.    INTRODUCTION

Plaintiff, Managematics LLC ("Managematics"), is a Massachusetts limited liability company that engages in the business of creating and selling software used by traders of financial products.  Managematics' principal products are "Voodoo Lines®" and "Ready.Aim.Fire!®" (each a "Product"; collectively "Plaintiff's Products").  Each Product is protected by various copyrights and trademarks.  David Starr, the manager and founder of Managematics, is a luminary in the field of trading stocks, options, and exchange-traded futures. Because of his reputation, the

Plaintiff's Products are highly coveted.  Mr. Starr provides daily market commentary to subscribers of the Simpler Futures and Simpler Options services available from Simpler Trading.  In addition, Mr. Starr publishes _Elliott Wave Dispatch_, a nightly video newsletter for traders.  When Mr. Starr speaks, people listen.

Unfortunately, the Plaintiff's Products are frequently pilfered.  The software that underlies Voodoo Lines® and Ready.Aim.Fire!® is the target of persons and entities that illegally copy and sell these and derivative products, in violation of the intellectual property rights of Managematics.  Plaintiff's Products are easy prey for counterfeiters because ThinkOrSwim, a popular financial platform, requires that the source code of Plaintiff's Products be made available to the end-user.  This provides ready access to the proprietary computer code underlying Plaintiff's Products which makes it easy for third parties to create illegal knock-off and counterfeit products ("Counterfeit Products").

eBay facilitates and actively promotes the illegal sale of Counterfeit Products that infringe the intellectual property rights of Managematics.  As such, eBay is liable to Managematics for direct, contributory, and vicarious infringement of the copyright and trademark rights of Managematics, and for engaging in unfair competitive practices.  Many times, Mr. Starr notified eBay of the fact that it was enabling vendors to sell Counterfeit Products on its Internet web site.   eBay has either ignored or

responded with undue delay to Plaintiff's notifications.   Managematics, through counsel, has attempted to engage in a dialog with eBay many times about its role in permitting the sale of Counterfeit Products, and all such efforts have been ignored.

It is in Defendant's financial interest to ignore Plaintiff's notifications about Counterfeit Products.   Defendant is in the business of providing inventory to an enormous body of potential buyers.   An estimated 182 million people currently purchase items from eBay.   Buyers flock to eBay because it is a well-known supply source that satisfies the eclectic demand of its 182 million users.   The more inventory eBay has, the more product it sells, and consequently the more money eBay makes from commissions.   Thus it is in eBay's financial interest to sell as many different products as possible and keep inventory levels high, even at the expense of infringing the rights of intellectual property owners such as the Plaintiff.   eBay is notorious for turning a willful blind eye to the unlawful actions of its sellers, if policing those sellers would mean a reduction in eBay's inventory, thereby reducing eBay's commission revenue.

All of which was predicted by Judge Edward Kaufman, over fifty years ago, when he wrote the opinion for the United States Court of Appeals for the Second Circuit, in a landmark case establishing the principle of vicarious copyright liability in a retail context.   In <u>Shapiro, Bernstein and Co. v. H.L. Green Co.</u>, 316 F.2d 304

(2d Cir. 1963), the plaintiff, an owner of musical compositions, claimed that the defendant, a department store, was selling goods which infringed the plaintiff's copyrights.  The defendant did not create the goods that infringed the plaintiff's copyrights, rather it was selling goods allegedly created by third parties.  Judge Kaufman wrote: ***"…[W]e might foresee the prospect – not wholly unreal – of large chain and department stores establishing "dummy" concessions and shielding their own eyes from the possibility of copyright infringement …"***.  Id. at 309.  eBay is the "large chain and department store" of the future that Judge Kaufman envisaged.

eBay's unfriendly and uncooperative attitude in responding to the Plaintiff is a symptom of a corporate culture that does not tolerate criticism, and, in fact, retaliates unlawfully against individuals who call attention to its unlawful practices.  This went so far as to culminate in criminal charges brought by the United States Department of Justice against six eBay employees in June of 2020 for conspiring to commit cyberstalking and tampering with witnesses.  *See* **Exhibit 1, *N.Y. Times* article, "Inside eBay's Cockroach Cult: the Ghastly Story of a Stalking Scandal**," September 26, 2020.

As a consequence, Managematics is now compelled to bring this action before this Court.  It seeks to obtain relief as a result of the illegal, unfair and deceptive acts

and practices of eBay which have: (a) infringed the federal and state intellectual property rights of Managematics; (b) subjected the Plaintiff to unfair competition from Defendant and various third-party sellers of Counterfeit Products and Competitor's Products; and, (c) violated Plaintiff's rights as a Massachusetts business to be free from unfair and deceptive acts of another entity engaging in business in the Commonwealth.

## II.        <u>PARTIES</u>

1.      Plaintiff, Managematics LLC, is a Massachusetts limited liability company, with a principal place of business in Wayland, MA ("Managematics"). David Starr is the manager and founder of Managematics.

2.      Defendant, EBAY, Inc., is a Delaware corporation having a principal place of business at 2025 Hamilton Avenue, San Jose, CA 95125 ("eBay").

3.      At all times relevant hereto eBay has been registered as a foreign corporation doing business in the Commonwealth.

### III.       <u>JURISDICTION AND VENUE</u>

4.      The Court has subject matter jurisdiction under 28 U.S.C. §1331 for claims involving a federal question.

5.       The Court has subject matter jurisdiction under 28 U.S.C. §1338  for trademark and unfair competition claims under the Lanham Act.

6.      This Court has subject matter jurisdiction under the copyright laws of the United States, 17 U.S.C. §§101 *et seq*., and Title II of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. §512. 9.

7.      This Court has supplemental jurisdiction over the state law and common law claims 28 U.S.C. §1367.  The state and common law claims arise from or are substantially related to the acts giving rise to the federal claims.

8.      This Court has personal jurisdiction over Defendant under Mass. Gen. Laws, ch. 223A, §3, because Defendant has conducted business in Massachusetts, committed acts of infringement in Massachusetts, and committed acts of unfair competition in Massachusetts.

9.      Venue in this district is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the infringing activity and unfair competition occurred and continues to occur in Massachusetts.

## IV.        **FACTUAL BACKGROUND**

### A.        **Intellectual Property Rights of Plaintiff.**

10.    Managematics has created and sells the product Voodoo Lines®.  The list price of Voodoo Lines® is $997.

11.    Voodoo Lines® is only sold directly by Plaintiff and by Plaintiff's exclusive reseller, Simpler Trading.  Voodoo Lines® sold elsewhere is counterfeit.

12.    Managematics owns the mark "Voodoo Lines®," a federally registered trademark, registration number 4,862,656 for use in connection with "computer software for use in securities charting and online trading."  The effective date of registration was December 1, 2015.

13.    Managematics has created and sells the product Ready.Aim.Fire!®. The list price of Ready.Aim.Fire!® is $697.

14.    Ready.Aim.Fire!® is only sold directly by Plaintiff's exclusive reseller, Simpler Trading.  Ready.Aim.Fire!® sold elsewhere is counterfeit.

15.    Managematics owns the mark "Ready.Aim.Fire!®," a federally registered trademark, registration number 5,813,170 for use in connection with

"downloadable computer programs and computer software for electronically trading securities."  The effective date of registration was July 23, 2019.

16.     The term "Plaintiff's Registered Trademarks" shall refer to the marks Voodoo Lines®  and Ready.Aim.Fire!® collectively.

17.     Managematics has registered its copyright interests in Voodoo Lines® with the United States Copyright Office.   On January 27, 2019, Managematics received copyright registration for the output displays of Voodoo Lines®, consisting of a group registration comprising 626 unpublished photographs.  This copyright registration number is VAu 001-345-592.

18.     On September 24, 2019, Managematics received copyright registration with an effective date of January 2, 2019 for the computer source code of Voodoo Lines®.  This copyright registration number is TX 8-778-918.

19.     Managematics has registered its copyright interests in Ready.Aim.Fire!® with the United States Copyright Office.  On May 23, 2020, Managematics received copyright registration for the computer source code comprising Ready.Aim.Fire!®.  This copyright registration number is TX 000-887-1331.

20.     The term "Plaintiff's Registered Copyrights" shall refer to Plaintiff's original works of authorship described in the copyright registrations set forth above in ¶¶ 17 – 19.

**B.     Defendant Aids and Abets the Sale of Counterfeit Products.**

21.     Defendant has knowingly encouraged, enabled, and facilitated the sale of Counterfeit Products and continues to do so to the current day.   By doing so, Defendant has violated the rights of Plaintiff, and continues to violate the rights of the Plaintiff, as described below.

22.     The examples provided below represent illustrative cases of Defendant's violations of Plaintiff's rights.  The examples provided below describe some, not all, of the instances in which Defendant has violated Plaintiff's rights.

23.     When Defendant permits a vendor to sell a product on its Internet web site, it identifies the particular sale with an eBay item number ("Item Number").

24.     When a product listed for sale on eBay is sold, the vendor pays eBay a fee equal to a percentage of the selling price.

25.     Item Numbers 323610955209, 183560937213, 332963586829, and 183580017638 (the "Offending Items – 1") each sold Counterfeit Products which infringed Plaintiff's Registered Trademarks.

26.     Plaintiff notified Defendant that it was selling Counterfeit Products that infringed Plaintiff's Registered Trademarks.  Defendant refused to remove the Offending Items - 1 based on its infringement of Plaintiff's Registered Trademarks.

27.     Ultimately Defendant did remove the Offending Items – 1, but only after Plaintiff was required by Defendant to demonstrate that the Offending Items – 1 also infringed Plaintiff's Registered Copyrights.

28.     Item Numbers 174377942348, 174355450550, 174327663803, 174325713647, 174325428106, 174325427364, 174307322576, 174243194235, 174241368744, 174208219430, 174160882944, 174160877650, 174160822124, 174160818647, 174160814705, 174160790681, and 174160754837 (the "Offending Items – 2") each sold or advertised Counterfeit Products which infringed Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights.  All Offending Items – 2 were offered for sale by the same person.  Plaintiff had previously notified Defendant about this seller who had repeatedly sold Counterfeit Products on eBay in the past.

29.     On August 5, 2020 Plaintiff notified Defendant that it was permitting the seller of Offending Items – 2 to use eBay to advertise Counterfeit Products that infringed Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights. Defendant has failed to remove the Offending Items - 2 despite Plaintiff's notifications.

30.     The Counterfeit Products advertised in the Offending Items – 2 were also advertised on YouTube and made available for download via the cloud service pcloud.  Plaintiff notified the owners of YouTube and pcloud of the Counterfeit Products, and unlike the Defendant, YouTube and pcloud removed the Counterfeit Products.

31.     On or about August 26, 2020, Mr. Starr caused to be purchased one of the Counterfeit Products advertised in the Offending Items – 2.  Mr. Starr inspected the Counterfeit Product and determined that it contained an unauthorized and pirated copy of Plaintiff's Product Ready.Aim.Fire!®.

32.     Item Number 402265163497 (the "Offending Item – 3") sold Counterfeit Products which infringed Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights.

33.     On May 20, 2020 Plaintiff notified Defendant that it was selling Counterfeit Products that infringed Plaintiff's intellectual property rights.

34.    On May 22, 2020 Plaintiff received an email from Defendant, in which Defendant offered Plaintiff a special incentivizing discount to purchase the Offending Item – 3, by offering to sell the Offending Item – 3 to the Plaintiff at a 20% discount.  *See* **Exhibit 2.**

35.    Upon information and belief, Defendant sent out similar solicitations to other potential buyers of Offending Item – 3.

36.    Eventually, but only after sending out the solicitations described above, Defendant did remove Offending Item – 3.

37.    Item Number 153348341957 (the "Offending Item – 4") sold Counterfeit Products which infringed Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights.

38.    On January 28, 2019, Plaintiff notified Defendant that it was selling Counterfeit Products that infringed Plaintiff's Registered Trademarks.

39.    On January 31, 2019, Plaintiff supplemented its original notification by sending the Defendant an additional notification regarding its sale of Counterfeit Products.   Plaintiff's supplemental notification informed the Defendant that the Counterfeit Products infringed Plaintiff's Registered Copyrights.

40.     On January 31, 2019 Plaintiff received an email from Defendant, in which Defendant actively solicited Plaintiff to purchase Offending Item – 4.  *See* **Exhibit 3**. The email further provided a link to an eBay Internet page to purchase Offending Item – 4 from the seller.  In this email, Defendant also identified other "similar items"  offered for sale by eBay that infringed the Plaintiff's intellectual property rights and which Plaintiff had previously identified to the Defendant as Counterfeit Products.  Nevertheless, Defendant continued to actively promote the sale of these Counterfeit Products.

41.     As of the filing date of this complaint, Plaintiff has notified Defendant of one hundred seven (107) instances in which Defendant permitted the sale of Counterfeit Products.  Many notifications involved the sale Counterfeit Products by repeat offenders; individuals who had a track record of selling Counterfeit Products. *See* **Exhibit 4.**

42.     While Defendant has removed some instances of Counterfeit Products being sold, Defendant continues to allow recidivists to repeatedly sell Counterfeit Products.

C.     **Defendant's Unlawful Use of Plaintiff's Registered Trademarks in Metatags Aids and Abets the Sale of Competitors' Products.**

43.     A "metatag" is a word that is not visible to a computer user, but is embedded in a particular Internet page, and used by search engines to locate Internet pages based on particularized search criteria.

44.     Defendant has engaged in and continues to engage in the practice of misleading consumers as to the origin and identity of certain products not sold by Plaintiff but which compete with Plaintiff's Products ("Competitors' Products"). Defendant does this by incorporating the Plaintiff's Registered Trademarks in metatags that promote these Competitors' Products as well as Counterfeit Products. This has the effect of diverting consumers searching for the Plaintiff's Products to the Competitors' Products and to Counterfeit Products that Defendant has indexed with Plaintiff's Registered Trademarks.

45.     On September 6, 2019 Plaintiff sent notice to Defendant's general counsel informing her of Defendant's unlawful activities regarding its illegal use of metatags and demanded that Defendant cease and desist these practices.

46.     Defendant responded to Plaintiff's letter via email.  In the email exchange which followed, Plaintiff assisted Defendant in locating instances of

Defendant's misuse of Plaintiff's Registered Trademarks and provided all information requested by Defendant.

47.     Defendant took no further action in response to Plaintiff's follow-up letters and emails.  Defendant did not respond to Plaintiff's emails inquiring about how to escalate Plaintiff's complaints in order to effect a resolution.

**D.     Defendant Refused to Discuss Settlement of Plaintiff's Claims Prior to Filing this Complaint.**

48.     Plaintiff's counsel attempted to contact Defendant regarding the alleged violations described above. Plaintiff's counsel sent Defendant's general counsel two letters requesting a conference about Plaintiff's allegations.  The first letter was sent on January 8, 2020.  The second letter was sent on February 10, 2020. Each letter was sent by United States Priority Mail.  Plaintiff's counsel received proof of delivery of each letter.

49.     Plaintiff's counsel received no response from Defendant with respect to the two letters described above.  As a consequence, Plaintiff's counsel sent Defendant's general counsel a more formal demand letter, stylized as a "93A Demand Letter" on April 9, 2020.  *Se*e **Exhibit 5**. This 93A Demand Letter was sent via

Federal Express.  Plaintiff's counsel received proof of delivery to Defendant by Federal Express.

50.    Plaintiff's counsel received no response from Defendant to the 93A Demand Letter.

51.    As a consequence of Defendant's failure to engage in any form of discussion regarding Plaintiff's claims, Plaintiff has been forced to file the present lawsuit.

## V.    COUNTS

## COUNT 1.    FEDERAL TRADEMARK INFRINGEMENT.

52.    Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

53.    Defendant's use of the Plaintiff's Registered Trademarks and / or confusingly similar marks is likely to cause confusion, mistake, or deception as to the source of Plaintiff's Products and the source of Counterfeit Products and Competitors' Products.

54.    Defendant's use of the Plaintiff's Registered Trademarks and / or confusingly similar marks in its metatags for Counterfeit Products and Competitors'

Products infringes Plaintiff's exclusive rights in Plaintiff's Registered Trademarks and constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

55.     Defendant's actions have been willful, wanton, and in deliberate disregard of the Plaintiff's Registered Trademarks.

56.     Defendant's use of the Plaintiff's Registered Trademarks in metatags for Counterfeit Products and Competitors' Products is greatly and irreparably damaging Plaintiff and will continue to do so unless restrained by this Court.  Plaintiff is without an adequate remedy at law.

57.     Defendant's actions have damaged Plaintiff in an amount as yet undetermined.

## COUNT 2.     FEDERAL CONTRIBUTORY TRADEMARK INFRINGEMENT.

58.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

59.     Defendant's actions described above, in particular those actions of the Defendant whereby the Defendant knowingly facilitated, participated in, and

attempted to induce the sale of Counterfeit Products, constitute contributory trademark infringement in violation of federal law.

60.     Upon information and belief, the actions of the Defendant described above were, and continue to be, willful and deliberate.

61.     Upon information and belief, Defendant earned and continues to earn revenues from the activities described herein.

62.     The actions of the Defendant will continue, if not enjoined.  Plaintiff has suffered, and continues to suffer, damages in an amount to be proven at trial consisting of, among other things, diminution in the value and good will associated with Plaintiff's Registered Trademarks, and injury to Plaintiff's business.

**COUNT 3.     FEDERAL VICARIOUS TRADEMARK INFRINGEMENT.**

63.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

64.     Defendant's actions described herein, in particular those actions of the Defendant whereby the Defendant knowingly facilitated, participated in, and

attempted to induce the sale of Counterfeit Products, constitute vicarious trademark infringement in violation of federal law.

65.      Upon information and belief, the actions of the Defendant described herein were, and continue to be, willful and deliberate.

66.      Upon information and belief, Defendant earned and continues to earn revenues from the activities described herein.

67.      The actions of the Defendant will continue, if not enjoined.  Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value and good will associated with Plaintiff's Registered Trademarks, and injury to Plaintiff's business.

## COUNT 4.    FEDERAL CONTRIBUTORY FALSE DESIGNATION OF ORIGIN.

68.      Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

69.      Defendant's acts constitute contributory false designation of origin in violation of 15 U.S.C. §1125.

70.     Upon information and belief, Defendant intends to continue its infringing acts, unless restrained by this Court.

71.     Defendant's acts have damaged and will continue to damage Plaintiff.  Plaintiff has no adequate remedy at law.

72.     The actions of the Defendant will continue, if not enjoined.  Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial, but in no event less than two hundred thousand dollars ($200,000) per counterfeit mark, up to two million dollars ($2,000,000) per counterfeit mark.

**COUNT 5.     FEDERAL VICARIOUS TRADEMARK COUNTERFEITING.**

73.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

74.     The illegal sales of Counterfeit Products that infringe the Plaintiff's Registered Trademarks have generated revenues for the sellers of the Counterfeit Products.

75.     Despite the Defendant's duty and right to control the sale of

Counterfeit Products on its Internet web site, the Defendant has taken no steps to stop or otherwise prevent the sale of Counterfeit Products, and has even promoted the sale of such Counterfeit Products.

76.     Defendant is therefore vicariously liable for the damages caused to Plaintiff as a result of the illegal promotion, advertisement, offer for sale and / or sale of Counterfeit Products on the Defendant's Internet web site and on other web sites that the Defendant linked to in violation of 15 U.S.C. § 1051, et seq. and the common law.

77.     The actions of the Defendant will continue, if not enjoined.  Plaintiff has suffered and continues to suffer damages as a result of the Defendant's vicarious conduct in an amount to be proven at trial, but in no event less than two hundred thousand dollars ($200,000) per counterfeit mark, up to two million dollars ($2,000,000) per counterfeit mark.

**COUNT 6.     STATE     TRADEMARK     INFRINGEMENT     UNDER MASSACHUSETTS COMMON LAW.**

78.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

79.     Plaintiff is engaged in trade and commerce in the Commonwealth of Massachusetts. This trade and commerce include the sale of Plaintiff's Products to consumers in the Commonwealth of Massachusetts.

80.     Defendant's actions as described above regarding the Plaintiff's Registered Trademarks constitute trademark infringement in violation of Massachusetts common law. This trade and commerce include the sale of Counterfeit Products and Competitors' Products to consumers in the Commonwealth of Massachusetts.

81.     Defendant's use of Plaintiff's Registered Trademarks and / or confusingly similar marks has caused and is causing irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law, and will continue to do so unless Defendant is enjoined by this Court.

82.     Defendant's actions have been willful, wanton, and in deliberate disregard of Plaintiff's rights in Plaintiff's Registered Trademarks.

83.     By reason of the foregoing, Plaintiff has suffered and will continue to suffer monetary damages and loss of good will.

## COUNT 7.   STATE TRADEMARK DILUTION UNDER MASS. GEN. LAWS, CH. 110H § 12.

84.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

85.     Defendant has diluted or likely will dilute Plaintiff's Registered Trademarks, thereby reducing the selling power of Plaintiff's Registered Trademarks and diluting the quality of Plaintiff's Registered Trademarks in violation of Massachusetts law, Mass. Gen. Laws, ch. 110H, §12.

86.     Defendant's use of Plaintiff's Registered Trademarks and / or confusingly similar marks was intended to cause confusion and / or mistake and to deceive customers and / or potential customers of Plaintiff.

87.     Plaintiff has suffered damages and Defendant has obtained profits and / or unjust enrichment as a result of Defendant's dilution of Plaintiff' Registered Trademarks.

88.     Defendant's acts as set forth herein have caused Plaintiff to lose control over its reputation and good will.

89.     Unless Defendant is restrained by this Court, Plaintiff will continue to suffer irreparable injury for which there is no adequate remedy at law.

**COUNT 8.     STATE CONTRIBUTORY TRADEMARK DILUTION UNDER MASS. GEN. LAWS, CH. 110H § 12.**

90.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

91.     Defendant's actions constitute contributory trademark dilution in violation of Mass. Gen. Laws, ch. 110H §12.

92.     Upon information and belief, Defendant intends to continue its unlawful conduct unless restrained by this Court.

93.     Defendant's acts have damaged and will continue to damage Plaintiff and Plaintiff has no adequate remedy at law.

**COUNT 9.     FEDERAL CONTRIBUTORY COPYRIGHT INFRINGEMENT.**

94.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

95.     Defendant's actions described herein, in particular those actions of the Defendant whereby the Defendant knowingly participated in and attempted to induce

the sale of certain Counterfeit Products constitute contributory copyright infringement in violation of federal law.

96.     Upon information and belief, the actions of the Defendant described herein were and continue to be willful and deliberate.

97.     Upon information and belief, Defendant earned and continues to earn revenues from the activities described herein.

98.     The actions of the Defendant will continue, if not enjoined.  Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value and good will associated with Plaintiff's Registered Copyrights, and injury to Plaintiff's business, but in no event less than one hundred fifty thousand dollars ($150,000) per copyright infringed.

**COUNT 10.   FEDERAL VICARIOUS COPYRIGHT INFRINGEMENT.**

99.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

100.     Defendant's actions described herein, in particular those actions of the Defendant whereby the Defendant knowingly participated in and attempted to induce

the sale of certain Counterfeit Products constitute vicarious copyright infringement in violation of federal law.

101.     Upon information and belief, Defendant earned and continues to earn revenues from the activities described herein.

102.     Upon information and belief, the actions of the Defendant described herein were and continue to be willful and deliberate.

103.     The actions of the Defendant will continue, if not enjoined.  Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value and good will associated with Plaintiff's Registered Copyrights, and injury to Plaintiff's business, but in no event less than one hundred fifty thousand dollars ($150,000) per copyright infringed.

**COUNT 11.    STATE UNJUST ENRICHMENT.**

104.     Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

105.     Upon information and belief, as a result of Defendant's unauthorized use of the Plaintiff's Registered Trademarks and Defendant's infringements of

Plaintiff's Registered Copyrights, Defendant has profited from its offering for sale and sale of Counterfeit Products and Competitors' Products.

106.    Upon information and belief, Defendant has been unjustly enriched by unfairly profiting from its misappropriation of Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights.

107.    Plaintiff has been damaged by Defendant's unjust enrichment.


## COUNT 12.    FEDERAL UNFAIR COMPETITION (15 U.S.C. §1125).

108.    Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

109.    Defendant is using Plaintiff's Marks and / or confusingly similar marks in connection with the sale, offer for sale, and advertising and marketing, of Counterfeit Products and Competitors' Products without consent from the Plaintiff.

110.    Defendant's unlawful acts are likely to cause confusion, mistake, or deception as to affiliation, connection, or association, between Plaintiff and the sellers of the Counterfeit Products and Competitors' Products on Defendant's Internet web site, and are likely to cause confusion, mistake, or deception regarding the origin of Plaintiff's Products and the origin of Counterfeit Products and Competitors'

Products.

111.     Defendant has engaged in unlawful acts that constitute unfair competition and false designation of origin in violation of §43(a) of the Lanham Act, codified at 15 U.S.C. 1125(a).

112.     Defendant's unlawful acts will result in harm to Plaintiff's reputation and its goodwill in Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights in the marketplace. Defendant's conduct has been willful, reckless, and in disregard for Plaintiff's valuable trademark rights and copyright rights. By reason of the foregoing, Plaintiff has suffered monetary damages and loss of goodwill.

113.     Defendant's acts are causing irreparable injury to Plaintiff, for which there is no adequate remedy at law, and will continue to do so unless Defendant's use of the Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights is immediately enjoined by this Court.

114.     As a result of Defendant's acts described herein, Plaintiff is entitled to damages in an amount to be proven at trial.

115.     By reason of the foregoing, Plaintiff has been damaged and is suffering, and will continue to suffer, irreparable harm, and is entitled to immediate

injunctive relief and damages.


## COUNT 13.   UNFAIR AND DECEPTIVE PRACTICES VIOLATION OF MASS. GEN. LAWS, CH. 93A.


116.   Plaintiff repeats, realleges, and incorporates by reference all allegations set forth above.

117.   At all material times, Plaintiff and Defendant were engaged in "trade or commerce" as those terms are defined by Mass. Gen. Laws, ch. 93A, §§2 and 9.

118.   Defendant engaged in unfair acts and deceptive business practices including but not limited to the following:

a)   Failing to remove Counterfeit Products from its Internet web site in a timely manner;

b)   Requiring Plaintiff to engage in a cumbersome process to report violations of Plaintiff's intellectual property rights, and then failing to act on the information submitted by Plaintiff in a timely fashion and in accordance with its own published procedures;

c)    Allowing repeat offenders who sell Counterfeit Products to continue to sell such and other Counterfeit Products, without policing the unlawful activities of such repeat offenders;

d)    Sending solicitations to the public in an attempt to induce its members to buy products which it had been informed were Counterfeit Products;

e)    Using Plaintiff's Registered Trademarks in its self-generated metatags in order to induce customers into buying Counterfeit Products and Competitors' Products which it confuses consumers into thinking are the Plaintiff's Products; and

f)    Refusing to discuss its unfair acts and practices with Plaintiff and its counsel in an attempt to frustrate and stonewall Plaintiff into acquiescence of Defendant's unlawful practices.

119.    The acts and practices of the Defendant described herein constitute unfair and deceptive acts and practices as prohibited by Mass. Gen. Laws, ch. 93A.

120.    The use of said unfair and deceptive acts and practices by Defendant have been willful, knowing, and intentional.

121.    Plaintiff's counsel sent Defendant the 93A Demand Letter attached as **Exhibit  5.**

122.    Defendant has failed to tender the relief requested or any other form of relief.

123.    Defendant's actions have caused Plaintiff to sustain the damages described more fully herein.

## VI.    PRAYERS FOR RELIEF

**WHEREFORE**, Plaintiff respectfully seeks the following relief:

1.      Entry of judgment for Plaintiff on each of its claims;

2.      An order and judgment preliminarily and permanently enjoining Defendant and its officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from further acts of infringement or dilution of Plaintiff's  Registered Trademarks and Plaintiff's Registered Copyrights;

3.      An order requiring Defendant to disclose the number of Counterfeit Products and Competitors' Products that have been sold on Defendant's Internet web site, along with an accounting of such sales, showing the amount of all such sales earned by the sellers, and the revenue earned by the Defendant as a result of collecting its commissions, and any other form of revenue, from such sales;

4.      An award of actual damages sustained by Plaintiff as a result of Defendant's infringement of Plaintiff's Registered Trademarks and Plaintiff's Registered Copyrights and an accounting of Defendant's profits in an amount to be proven at trial;

5.      An award in the alternative of statutory damages pursuant to 15 U.S.C. §1117(c) and 17 U.S.C. §504;

6.      A judgment trebling any damages award, in light of Defendant's:

      i.   Willful trademark infringement;
      ii.  Willful use of counterfeit marks; and
      iii. Unfair acts and deceptive practices;

7.      Pre- and post-judgment interest on any past damages;

8.      Costs of suit and reasonable attorneys' fees; and

9.    Any and all other legal and equitable relief as may be available under

law and which the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial

of any issues in this action so triable.

**Plaintiff:**

**Managematics LLC**

By its attorney,

Dated: November 16, 2020

PETER KELMAN, ESQ.
BBO #543059
230 Second Avenue, Suite 110
Waltham, MA 02451-2010
(781) 684-8448